**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Niles Lipin,<br><br>Debtor.<br><br>Niles Lipin,<br><br>Appellant,<br><br>v.<br><br>The Estate of Robert W. Walker and Eve F. Walker,<br><br>Appellees. | No. CV-15-02078-PHX-NVW<br><br>Bk. No. 2:11-bk-26500-GBN<br>Adv. No. 2:11-ap-02323-GBN<br><br>**ORDER** |

    Niles Lipin defaulted on a loan secured by a deed of trust on land. The land was sold at a sheriff's sale, but the sale price did not satisfy all of Lipin's debt. Lipin then filed for bankruptcy. In bankruptcy court, Lipin argued that his remaining debt should be reduced by the value of improvements he made to the land prior to the sheriff's sale. The bankruptcy court deemed this argument untimely under A.R.S. § 12-1566(C). For the reasons that follow, the bankruptcy court's ruling will be affirmed.

## I. BACKGROUND

In 2002, Lipin's company AWD Ranch, LLC executed a promissory note in favor of Robert and Eve Walker. (*See* Doc. 12-2 at 6.[1]) The note was secured by a deed of trust on approximately 240 acres of desert land in Pinal County ("the Land"). (*Id.*)

In 2004, Lipin stopped making payments on the note, and the parties became embroiled in a lawsuit in Pinal County Superior Court. (*See* Doc. 8-1 at 13–14.) In August 2009, near the end of the lawsuit, the Walkers' attorney emailed Lipin's attorney about what Lipin should do before vacating the Land. (Doc. 8-2 at 47.) The email urged the removal of "all debris, garbage and anything at all that is movable," but not "any fixtures" such as "fencing," "buildings," "dams," "channels," "berms," "impoundments," and "ponds." (*Id.*)

In December 2009, the Superior Court adjudged Lipin in default of his payment obligation, foreclosed the deed of trust, and ordered a sheriff's sale of the Land. (Doc. 11-1 at 3–5.) In April 2010, the Walkers bought the Land at the sheriff's sale for $1,100,000. (*See* Doc. 11-1 at 16.) Lipin's debt exceeded that amount, so in May 2010 the court ordered Lipin to pay the difference, plus various costs and fees. (*Id.* at 16–17.) In September 2011, Lipin filed for bankruptcy. (Doc. 8-1 at 6–10.)

In bankruptcy proceedings, the Walkers claimed that Lipin still owed them $1,040,832. (*See* Doc. 8-1 at 13.) Lipin then filed a Motion for Offsets against the Walkers' claim, pointing out that he had made improvements to the Land prior to the sheriff's sale. (Doc. 8-1 at 233, 236–37.)[2] Specifically, he had added "wells, buildings, [plant] nurseries, warehouses, fencing, septic systems, roads, culverts and other assets affixed to the land," at a cost of "more than $2.6 million." (*Id.* at 237.) According to Lipin, these "fixed assets attached to the land" were worth far more than the price the Walkers paid at the sheriff's sale, yet the Walkers "refused to allow" him to re-acquire or

---

[1] Citations to document numbers refer to this Court's docket.

[2] Lipin simultaneously filed a Motion to Dismiss the claim. (Doc. 12-1 at 7.)

1 sell these assets. (*Id.* at 237, 239.) Thus, Lipin concluded that the Walkers enjoyed
2 "undeniable financial benefits" for which he "received no offset." (*Id.* at 237.)

3 At oral argument, the bankruptcy judge denied Lipin's motion as untimely. (Doc.
4 8-1 at 137, 181, 189.) The judge reasoned as follows: Lipin seeks offsets related to the
5 Land's value. (*Id.* at 179–180.) But under state law, Lipin could have asked the Superior
6 Court to determine the Land's fair market value within thirty days of the sheriff's sale.
7 (*Id.* (citing A.R.S. § 12-1566(C)).) If the fair market value was higher than the sale price,
8 Lipin's debt would have been reduced by that value instead. (*Id.*) Thus, Lipin had an
9 opportunity to seek offsets in Superior Court. (*Id.* at 181.) By failing to do so, he waived
10 the argument. (*Id.*)

11 Lipin then filed a Motion for Reconsideration, reiterating that he spent more than
12 $2.6 million in "property improvement" and that the Walkers stood to receive "a double
13 recovery." (Doc. 8-1 at 331–33.) The bankruptcy judge declined to reconsider, noting
14 that Lipin failed to address the timeliness problem. (Doc. 8-1 at 340, 356, 359.) The
15 judge then issued a written order denying Lipin's motion for offsets and motion for
16 reconsideration "with prejudice." (Doc. 8-1 at 375–76.)

17 Lipin appeals these rulings. (Doc. 1 at 5.) He argues that the state law procedure
18 cited by the bankruptcy judge did not apply to his motion for offsets, because his motion
19 rested on broader legal principles and did not challenge the sale price of the Land. (Doc.
20 8.) He also objects to the bankruptcy judge's decision to deny offsets "with prejudice,"
21 because he might be entitled to other offsets later. (*Id.*)

22 The Walkers argue that this Court lacks jurisdiction over this appeal, that the
23 bankruptcy judge's rulings were correct, and that this appeal is so frivolous that they
24 deserve attorneys' fees and costs. (Doc. 11.) Lipin criticizes these arguments and
25 requests attorneys' fees and costs of his own. (Doc. 12.)

## II. JURISDICTION

Federal district courts have jurisdiction to hear appeals from "final" bankruptcy court orders. 28 U.S.C. § 158(a)(1). Finality is a "flexible concept" in the bankruptcy context. *In re Perl*, 811 F.3d 1120, 1126 (9th Cir. 2016). A bankruptcy court order is "final" if it (1) "resolves and seriously affects substantive rights" and (2) "finally determines the discrete issue to which it is addressed." *In re SK Foods, L.P.*, 676 F.3d 798, 802 (9th Cir. 2012) (quoting *In re AFI Holding*, 530 F.3d 832, 836 (9th Cir. 2008)).

The order denying Lipin's motion for offsets and motion for reconsideration was final. It rejected one of Lipin's main defenses against the Walkers' claim, thereby resolving and seriously affecting his substantive rights. And it did so "with prejudice," thereby finally determining the issue. This Court has jurisdiction under § 158(a)(1).

Even if the order were interlocutory, the Court would grant to leave to appeal under § 158(a)(3) because the order foreclosed a significant potential reduction in Lipin's debt.

## III. STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo. *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010). The Court must accept the bankruptcy court's findings of fact, unless the Court is left with the definite and firm conviction that a mistake has been committed. *Id.* Mixed questions of law and fact are reviewed de novo. *Id.*

## IV. ANALYSIS

The bankruptcy court correctly denied Lipin's motion for offsets as untimely. The fact that the denial was "with prejudice" does not prevent Lipin from raising a different argument for offsets later. No fees or costs will be awarded on appeal.

### A. Lipin's motion for offsets was untimely.

Arizona law protects foreclosure judgment debtors from the risk that their foreclosed real property will be sold below market price:

> Any sale of real property to satisfy a [foreclosure judgment] shall be a credit on the judgment in the amount of either the fair market value of the real property or the sale price of the real property at the sheriff's sale, whichever is greater, in accordance with § 12-1566.

A.R.S. § 33-725(B); *see also* A.R.S. § 12-1566(B). To invoke this protection, the debtor must request a judicial determination of the property's fair market value within thirty days after the foreclosure sale, pursuant to A.R.S. § 12-1566(C):

> Any judgment debtor against whom a [foreclosure judgment] has been entered may, not later than thirty days after sale of the real property, file a written application with the court for determination of the fair market value of the real property which has been sold.

A.R.S. § 12-1566(C). The statute does not authorize extensions of this thirty-day window. *John Munic Enterprises, Inc. v. Laos*, 235 Ariz. 12, 21, 326 P.3d 279, 288 (Ct. App. 2014). If the debtor requests a fair market value determination, all parties must be notified and the court shall hold an evidentiary hearing on the matter:

> Notice of filing the application and of the hearing shall be given to all parties to the action. The fair market value shall be determined by the court at a priority hearing which shall be held upon such evidence as the court may allow.

A.R.S. § 12-1566(C). If the court finds that the property was sold for less than its fair market value, the court shall award the debtor the difference:

> The court shall issue an order crediting the amount due on the judgment with the greater of the sales price or the fair market value of the real property.

*Id.* A debtor's request for a fair market value determination extinguishes his usual right to redeem the foreclosed property within six months after sale:

> If an application has been filed, there shall be no right to redemption as to the real property sold . . . .

- 5 -

1 *Id.*; *see also Gold v. Helvetica Servicing, Inc.*, 229 Ariz. 328, 331–32, 275 P.3d 627, 630–31 (Ct. App. 2012).

Lipin's motion for offsets argued that his improvements to the Land were worth more than what the Walkers paid at the sheriff's sale. This is essentially an argument that the Land was sold below market price. Any such argument should have been raised in the time, place, and manner designated by the Arizona legislature in A.R.S. § 12-1566(C). Thus, the bankruptcy court did not err in denying Lipin's motion.

Lipin challenges this conclusion in two ways. First, he says A.R.S. § 12-1566(C) does not supersede the bankruptcy court's broad power to prevent unjust enrichment. He suggests several sources of this power, including "equitable remedies of restitution," "Rule 60(c)(5)" of the Arizona Rules of Civil Procedure, and "the general rule against double recovery in Arizona case law." (Doc. 8 at 9.)

But Lipin ignores the basic rule of statutory construction that "the specific governs the general." *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). The Arizona legislature set a specific time, method, and forum in which to adjudicate debtors' objections to sale prices of foreclosed real property. These procedures reflect the legislature's decision that the fair market value of foreclosed property is best determined near the time of foreclosure, with the input of all parties, by the court most familiar with the matter. The legislature also imposed a consequence on any debtor who invokes these procedures: the extinguishment of the usual right to redeem the foreclosed property. Lipin cannot evade this statutorily prescribed process simply by grounding his argument in broad legal principles.

Second, Lipin says that even if his objections to the sale price of the *Land* should have been raised earlier, his motion for offsets was aimed at assets *separate* from the Land. In support of this distinction, Lipin points out that the deed of trust securing his promissory note refers only to the Land itself, not any subsequent improvements. He also says that one of the ways he improved the Land was by extracting silt from ponds, and that this extracted silt was his "personalty." (Doc. 8 at 14–15.)

- 6 -

1  Lipin infers too much from the deed of trust's silence regarding improvements to
2 the Land.  Even if the deed of trust did not explicitly grant the Walkers a security interest
3 in subsequent improvements, "the general common law rule is that when a fixture
4 becomes complemental to real property, it becomes part of the realty, and the fixture
5 becomes part of the security with regard to any existing mortgage." *K & L Distributors,*
6 *Inc. v. Kelly Elec., Inc.*, 908 P.2d 429, 432–33 & n.6 (Alaska 1995) (alterations omitted)
7 (collecting cases).

8  According to Lipin's motion for offsets, his improvements consisted of "wells,
9 buildings, [plant] nurseries, warehouses, fencing, septic systems, roads, culverts and other
10 assets affixed to the land."  (Doc. 8-1 at 237.)  These were all fixtures that became part of
11 the Land under the deed of trust.  Arizona law uses a three-part test for determining when
12 a chattel becomes a fixture:  "[1] There must be an annexation to the realty or something
13 appurtenant thereto; [2] the chattel must have adaptability or application as affixed to the
14 use for which the real estate is appropriated; and [3] there must be an intention of the
15 party to make the chattel a permanent accession to the freehold." *Murray v. Zerbel*, 159
16 Ariz. 99, 101, 764 P.2d 1158, 1160 (Ct. App. 1998) (quoting *Fish v. Valley Nat. Bank of*
17 *Phoenix*, 64 Ariz. 164, 170, 167 P.2d 107, 111 (1946)).  The improvements identified by
18 Lipin were annexed to the Land, adaptable to its use, and intended to be permanent.
19 Thus, Lipin's argument that he was not paid for these improvements is essentially an
20 argument that he was underpaid for the Land, which he could have raised in accordance
21 with A.R.S. § 12-1566(C).  That opportunity has long passed.

22  Similarly, Lipin's claim that the extracted silt is his personalty is overdue.  In the
23 bankruptcy court, Lipin did not explain why the silt was relevantly distinct from the
24 Land.  In fact, an exhibit to his motion for offsets identified silt as one of the "assets
25 affixed" to the Land.  (*See* Doc. 8-2 at 5, 15.)  Lipin's previous failure to distinguish the
26 silt from the Land dooms his attempt to do so now, since appellate courts "do not
27 normally consider arguments not raised below." *Noel v. Hall*, 568 F.3d 743, 750 n.11
28 (9th Cir. 2009).

In any event, Lipin's argument about why the silt is his personalty is unpersuasive. It consists entirely of the following block quotation from the *American Jurisprudence* legal treatise, describing how objects may be severed from real property and become personal property:

> As a general rule, property which is essentially real may become personal property by severance from the real property with the intent to change it to personal property. Examples of things that are severable from land are shells, sand, gravel, coal and other minerals, mud, humus, topsoil, leaf mold, *and other forms of dirt and soil sold* and used to improve lawns and gardens. Therefore, real property in the form of mineral rights or a profit a prendre is transformed into personal property when the physical substance is severed from the land.

(Doc. 8 at 14–15 (emphasis added by Lipin).) Lipin cites no case law on the matter, nor does he explain how this description of severance applies to the silt he extracted. Indeed it appears not to apply, because it requires an "intent to change" the severed object "to personal property." Lipin offers no evidence that he intended to change the silt to personal property. In fact, before the sheriff's sale, the Walkers' attorney urged Lipin to remove from the Land "anything at all that is movable" but not "any fixtures." (Doc. 8-2 at 47.) If Lipin truly thought the silt was personal property, he should have removed it. If he thought the silt was a fixture, or if he thought the Walkers wrongly characterized it as a fixture, he should have raised his objection in accordance with A.R.S. § 12-1566(C).

**B.    The bankruptcy court's denial of Lipin's motion for offsets "with prejudice" does not prevent Lipin from raising a different argument for offsets.**

Lipin says the Walkers are currently pursuing litigation against third parties "for essentially the same damages" they seek against Lipin in bankruptcy. (Doc. 8 at 19.) If the Walkers are successful in that litigation, Lipin hopes to offset the Walkers' claim against him by whatever amount the Walkers recover from those third parties. (*Id.* at 20.) He fears that the bankruptcy court has prevented him from requesting that offset because it denied his motion for offsets "with prejudice." (*Id.*)

Lipin's fear is misplaced.  The phrase "with prejudice" does not preclude Lipin from requesting offsets on an entirely different basis.  In any event, the Walkers have declared that if they recover in the third-party lawsuit, they will "immediately apply a credit" against any judgment issued by the bankruptcy court in this matter.  (Doc. 11 at 13.)

### C. No attorneys' fees or costs will be awarded.

The Walkers seek attorneys' fees and costs.  Costs may be awarded to the appellee in a bankruptcy appeal if the appeal if "frivolous."  Fed. R. Bankr. Proc. 8020(a).  Lipin's appeal is weak but not frivolous.  He raises a genuine objection to a consequential ruling made by the bankruptcy court.

Lipin also seeks attorneys' fees and costs.  He cites no authority or good reason for such an award.

IT IS THEREFORE ORDERED affirming the bankruptcy court's June 26, 2015 and October 1, 2015 orders denying Lipin's Motion for Offsets, Motion to Dismiss, and Motion for Reconsideration.

Dated this 15th day of July, 2016.

                                             Neil V. Wake
                               Senior United States District Judge